### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**VS.**                                        **CASE NO. 6:08-cr-228-JA-KRS**

**JONATHAN MELENDEZ**

### ORDER

Before the Court is Defendant Melendez's Amended Motion for Compassionate Release. (Doc. 635).   The Government opposes Defendant's motion.  (Doc. 641).  To prevail on his motion, Defendant must show three elements: 1) he exhausted his administrative remedies; 2) extraordinary and compelling reasons exist to warrant a reduction; and 3) he is not a danger to the public.  Because Defendant cannot show any of the three elements, his motion must be denied.[1]

On April 9, 2009, a jury found Defendant guilty of conspiracy to distribute and to possess with intent to distribute cocaine hydrochloride of five kilograms or more, in violation of 21 U.S.C. § 846.  (Doc. 261).  On June 26, 2009 the Court sentenced Defendant to 240 months imprisonment and 10 years of supervised release. Defendant was 29 years old at the time of his conviction in this case.  In

---

[1] Although the Court need not address whether Defendant presents extraordinary and compelling circumstances due to Defendant's failure to exhaust his administrative remedies, the Court addresses this element below.

2002, at the age of 22, Defendant was convicted of trafficking in 300 Plants or 25 pounds of Cannabis in state court in Orange County, Florida and was sentenced to 36 months imprisonment followed by 60 months of probation. (Doc. 604 at 16).  Defendant was released from that imprisonment on April 6, 2006. (*Id.*).  While on probation for that offense, Defendant violated conditions of supervision by participating in the events resulting in this conviction.  (*Id.*).

## I.    LEGAL FRAMEWORK FOR REDUCTION IN SENTENCE

"The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." *United States v. Phillips,* 597 F.3d 1190, 1194-95 (11th Cir. 2020).  Congress granted the courts limited authority to modify a sentence in 18 U.S.C. § 3582(c):

> **(c) Modification of an imposed term of imprisonment.-**
> -The court may not modify a term of imprisonment once it has been imposed except that--
> **(1)** in any case--
> **(A)** the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in <u>section 3553(a)</u> to the extent that they are applicable, if it finds that--
> **(i)** extraordinary and compelling reasons warrant such a reduction; or

**(ii)** the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under <u>section 3559(c)</u>, for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under <u>section 3142(g)</u>;

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Because Defendant is under 70 years old, the only question is whether extraordinary and compelling reasons exist warranting reduction of Defendant's sentence.

Factors constituting extraordinary and compelling reasons are outlined in U.S.S.G. 1B1.13, the policy statement underlying 18 U.S.C. §3582. These reasons include Defendant's: (A) medical conditions, (B) age, if over 65 years, and (C) family circumstances. Neither (B) or (C) apply because Defendant is not over 65 and he does not claim a relevant family circumstance. [2] Extraordinary medical conditions include (i) any terminal illness, and (ii) any

---

[2] Family circumstance  is either (i) the death or incapacitation of the caregiver of the defendant's minor child or minor children or (ii) the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. USSG 1B1.13, Application Note 1.(C). Defendant does not allege either of these conditions, alleging only that his parents need his help.  Doc. 635 at 7-8.  Parents do not fall into either of the family circumstance categories.  Further, Defendant's brother, who offered to give Defendant a job while Defendant lived with his parents, appears to live near Defendant's parents so they are evidently not without family support. (Doc. 635 at 8).

"serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. §1B1.13, cmt. n.1(A).   But, even when an extraordinary and compelling reason exists, a district court should only reduce a term of imprisonment if it determines that the defendant is not a danger to the public. U.S.S.G. §1B1.13(2). And a district court must consider whether the 18 U.S.C. § 3553(a) factors weigh in favor of release. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. §1B1.13.

## II.   DEFENDANT FAILED TO EXHAUST HIS ADMINSTRATIVE REMEDIES

Defendant's counsel sent a letter to the warden of the Bureau of Prison facility where Defendant is confined requesting that Defendant be placed on "supervised release or home confinement."   (Doc. 635-1).   Counsel sent this letter via fax and email on October 14, 2020 and via FedEx on October 15, 2020 (delivered to the facility by FedEx on October 16, 2020). (Doc. 635-1 at 4-7). On November 5, 2020, the warden denied Defendant's request and delivered that denial to Defendant on November 8, 2020.   (Doc. 635-1 at 8).   Thus, the

4

warden's denial was delivered within thirty days from the time she received the request.[3]

Because 30 days passed from the time Defendant submitted his request, both the Government and Defendant agree Defendant exhausted his administrative remedies. The warden's response denying relief states:

> Based on the information above, if you are not satisfied with this response, you may appeal this decision via, the administrative remedy process by submitting your concerns on the appropriate form (BP-9) within 20 days of the receipt of this response.

Doc. 635-1 at 8.

The twenty days passed and Defendant did not appeal the warden's denial of his request. The statute is clear: this Court can only act on a motion from Defendant when his request to the warden has *lapsed* after 30 days *or*

---

[3] Counsel argues that since the denial was provided only to Defendant and not to him, the denial was not received within thirty days. The only authority counsel provides for this assertion is *Graham v. United States*, 96 F.3d 446 (1996). But counsel's reliance on *Graham* is misplaced. *Graham* speaks only to civil actions and administrative claims. Per 28 C.F.R. § 571.61(b), the "Bureau of Prisons processes a request made by another person on behalf of an inmate in **the same manner** as an inmate's request." (Emphasis added). That is, the warden has thirty days to process the request and to inform the inmate of his or her decision. Bureau of Prisons Policy Number 1330.18, Administrative Remedies, 13. Remedy Processing, f. Response Distribution, provides that the response "shall be returned to the inmate." Further, 28 C.F.R. 542.16 provides that an inmate may "obtain **assistance** from outside sources such as . . . attorneys. However, **no person** may submit a Request . . . on the inmate's behalf." (Emphasis added). Thus, while counsel assisted Defendant in proceeding in the BOP's Administrative Remedy Program, he could not submit any request on his behalf and expect to receive a response. Counsel's argument on this point fails.

5

Defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on his behalf. Here, Defendant's request did not lapse because the warden responded in a timely manner and Defendant did not appeal the warden's decision. *See United States v. Wojt*, No. 8:18-cr-00417-T-02AEP, 2020 WL 3128867, at \*1 (M.D. Fla. June 12, 2020)("A warden's denial does not constitute a final administrative decision and as Defendant provides no evidence of an appeal, Defendant has not exhausted his administrative remedies.").

The Eleventh Circuit has not addressed the question whether the parties can waive the statute's exhaustion predicate.  The district courts are split on the issue. Many have concluded it cannot be waived (*United States v. Smith,* No. 8 :17-cr-412-T-36AAS, 2020 WL 2512883, at \*4 (M.D. Fla. May 15, 2020)(collecting cases)), while others have concluded to the contrary (*United States v. Smith,* No. 12 Cr. 133 (JFK), 2020 WL 1849748, at \*2 (S.D.N.Y. April 13, 2020)(collecting cases)). This Court agrees that exceptions cannot be read into statutory exhaustion requirements where Congress has provided otherwise. *See e.g., Ross v. Blake,* 136 S. Ct. 1850 (2016).   Thus, the Court concludes the exhaustion of administrative remedies in 18 U.S.C. § 3582(c) cannot be waived.

The failure to exhaust administrative remedies within the BOP is fatal to a defendant's motion for compassionate release. *United States v. Raia,* 954 F.

3d 594, 597 (3d Cir. 2020). ("Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance."); *see also United States v. Estrada Elias*, No. 6: 06-096-DCR, 2019 WL 2193856, at *2 (E.D. Ky. May 21, 2019); *accord United States v. Elgin*, Case No. 2:14-cr-129-JVB-JEM, 2019 U.S. Dist. LEXIS 86571, *2–3 (N.D. Ind. May 23, 2019); *cf. United States v. Leverette*, 721 F. App'x 916, 917 (11th Cir. 2018) (exhaustion of BOP remedies is requisite for judicial review under 28 U.S.C. § 2241).

## III.   DEFENDANT PRESENTS NO EXTRAORDINRY AND COMPELLING CIRCUMSTANCES

Although failing to exhaust administrative remedies is full reason to deny Defendant's motion, the Court nonetheless considers Defendant's argument as to extraordinary and compelling reasons.   The only extraordinary and compelling reasons Defendant advances as to him, as opposed to the health of his parents,[4] is that he suffers from high blood pressure and "the critical status of COVID-19 in his area."   (Doc. 635 at 9).   Neither is an extraordinary and compelling reason.

---

[4] As stated above, the health of Defendant's parents is not a family circumstance and is not an extraordinary and compelling reason under § 3582(c)(1)(A).

The CDC advises that a person with hypertension might be at an increased risk for severe illness from the virus that causes Covid-19.[5] However, this condition is not extraordinary. "According to the CDC, 108 million adults in the United States (nearly 45%) have high blood pressure or take medication for the condition. . . . . Assuming federal prisoners experience [this condition] at about the same rate as the general population, . . . roughly half the prison population would be eligible for compassionate release." *United States v. Hayes,* No. 3:18-cr-37-J-34JBT, 2020 WL 3611485, at * 2 (July 2, 2020, M. D. Fla.)(footnotes omitted). At the time of his PSR on June 15, 2009, Defendant's health was good and he "never suffered from any medical problems." (Doc. 604 at 18). He was diagnosed with hypertension on June 26, 2020 (Doc. 645-1) but there is nothing in the record to indicate it is not being controlled by his facility. High blood pressure alone is not an extraordinary and compelling circumstance.

Nor is Covid-19. "The mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *Raia,* 954 F.3d at 597; *see also United States v. Gileno,* 448 F. Supp. 3d 183, 188 (D. Conn. 2020) (denying compassionate release because BOP's proposed plan adequately addresses the COVID-19

---

[5] https://www.cdc.gov.

pandemic).[6]

While the Court is empathetic to the plight of those in prison with this looming pandemic, it cannot carte blanche release the prison population. Each individual is unique and must present extraordinary and compelling circumstances for this Court to allow a sentence reduction. The mere possibility of becoming infected with Covid-19 applies to the entire prison population and is not an extraordinary and compelling reason for Defendant's release. Nor has Defendant identified a medical condition that falls within one of the categories specified in the Sentencing Commission's policy statement's application note. He does not have a terminal illness and he is able to provide self-care.

Defendant also argues for relief under U.S.S.G. § 1B1.13 (1)(D) "Other Reasons" which allows for other extraordinary and compelling reasons as determined by the Director of the Bureau of Prisons. However, the Director of the Bureau of Prisons has made no such determination as to this Defendant. Nor has the Director of the Bureau of Prisons issued any policy or finding that

---

[6] *See also, e.g., United States v. Korn*, No. 15-CR-81S, 11-CR-384S, 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) ("in this Court's view, the mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme.").

if sentenced today, Defendant would receive less time in prison under section 403 of the First Step Act and such qualifies as an extraordinary and compelling reason. And, while the First Step Act amended §3582(c) to allow a prisoner to bring a motion directly to a court under certain circumstances, the Sentencing Commission has not amended the underlying policy, 1B1.13. Defendant's request for relief is not consistent with the applicable policy statements.

Courts are prohibited from granting compassionate release unless "such a reduction is consistent with applicable policy statements issued by" the Commission. 18 U.S.C. § 3582(c)(1)(A). *See Dillon v. United States*, 560 U.S. 817, 821 (2010)(a "reduction must be consistent with applicable policy statements issued by the Sentencing Commission"); *United States v. Colon,* 707 F.3d 1255, 1259-60 (11th Cir. 2013) (3582(c)(2) requires courts to follow policy statements of the Sentencing Commission); *United States v. Nasirun*, No. 8:99-CR-367-T-27TBM, 2020 WL 686030, at *2 (M.D. Fla. Feb. 11, 2020)("any reduction must be consistent with the policy statements of the Sentencing Commission").

And "neither the 1B1.13 commentary nor BOP Program Statement 5050.50 identify post-sentencing developments in case law as an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Saldana,* No. 19-7057, 2020 WL 1486892, at *3 (10th Cir. Mar. 26, 2020) (unpublished). *See also, United States v. Neubert,* No. 1:07-cr-00166-SEB-KPF,

2020 WL 1285624, at *3 (S.D. Ind. March 17, 2020)( "the disparity between [defendant's] actual sentence and the one he would receive if he committed his crimes today is not an 'extraordinary and compelling circumstance.'"); *United States v. Rucker,* No. 04-20150-JWL, 2020 WL 4365544, at *3 (D. Kansas July 30, 2020)("a disparity based on a change in sentencing law cannot serve as the basis for relief under Section 3582(c)(1)(A)").

The basis for compassionate release is individual circumstances and not a medium for mass reductions of statutory penalties. Allowing the remedy sought by Defendant would alter Congress' sentencing scheme and undermine the finality of sentences. "Without finality, the criminal law is deprived of much of its deterrent effect." *Teaque v. Lane,* 489 U.S. 288, 309 (1989).

The Court finds no compelling and extraordinary circumstances to grant a sentence reduction for this Defendant.

## IV.   DEFENDANT POSES A SAFETY RISK TO THE PUBLIC

Moreover, the Court has considered the 3553(a) factors and find they also weigh against granting Defendant relief.   Defendant poses a safety risk to others.   While on probation for a state conviction for trafficking  in cannabis, Defendant committed the offense in this case of conspiracy to distribute and to possess with intent to distribute cocaine hydrochloride of five kilograms or more. Defendant argues "this was not a violent offense nor have there ever been any

allegations of Mr. Melendez committing a violent act." (Doc. 645 at 4). While it may be true that Mr. Melendez did not engage in violent acts himself, he enabled the supply of cocaine and the "supply helps drive use." Laura Ungar, *Not Yesterday's Cocaine: Death Toll Rising From Tainted Drug*, Kaiser Health News, November 25, 2019. Cocaine use "has a high potential for abuse, physical and psychological dependence, and poses many serious health risks to users." *The Risks and Side Effects of Cocaine Addiction*, American Addiction Centers, last updated November 12, 2020. The "rise in cocaine use can be attributed to increases in availability" with the CDC reporting "cocaine-involved deaths increased for the fourth straight year, with more cocaine deaths recorded in 2016 than any other year since at least 1999 . . .there were 10,375 cocaine-involved deaths in the United States in 2016." *2018 National Drug Threat Assessment*, U.S. Department of Justice Drug Enforcement Administration, October 2018 at 39, 45. Defendant's actions are a safety risk to others. The sentence imposed is necessary to protect the public, to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to deter Defendant from future crimes.

## V.   CONCLUSION

Because Defendant failed to exhaust his administrative remedies, presents no extraordinary and compelling circumstances, and is a safety risk to

the public, his Amended Motion for Compassionate Release (Doc. 635) is **DENIED.**

**DONE** and **ORDERED** in Orlando, Florida, on March 18, 2021.

JOHN ANTOON II
United States District Judge

Copies furnished to:
United States Attorney
United States Probation Office
Counsel for Defendant